IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **ROSALIND CHAMBERS**, on behalf of herself and others similarly situated, ) ) | Case No. 3:22-cv-468 |
| Plaintiff, ) ) | Judge Jeffrey J. Helmick |
| vs. ) ) | |
| **CONTINENTAL SECRET SERVICE BUREAU, INC.**, ) ) ) | |
| Defendant. ) | |

**JOINT SUPPLEMENTAL STATEMENT IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**I.    INTRODUCTION**

Pursuant to the Court's November 14, 2023, Order (Doc. 26), the Parties respectfully submit this Joint Supplemental Statement in Support of Final Approval of Class Action Settlement. Specifically, the Parties discuss the seven factors that the Sixth Circuit uses to assess whether the class action settlement is "fair, reasonable, and adequate," in particular the probability of success on the merits. *Id.* at PageID #: 278 (*citing*, *Int'l Union, UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) and *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011). Attached as **Exhibit 1** is the Supplemental Declaration of Class Counsel Robi J. Baishnab ("Baishnab Supp. Dec.").

**II.    ANALYSIS**

A class action settlement may be approved if the Court finds it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When determining whether a class action settlement is fair, reasonable, and adequate, courts consider: (1) the risk of fraud or collusion; (2) the complexity,

expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Int'l Union, UAW*, 497 F.3d at 631. Application of these principles to this Settlement demonstrates that approval is warranted.

### 1. No indicia of fraud or collusion exists.

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *White v. Premier Pallet & Recycling, Inc.*, N.D. Ohio No. 5:18-cv-1460, 2018 U.S. Dist. LEXIS 174414, at *4 (Oct. 10, 2018) (internal citation omitted). Here, settlement was reached only after arms-length and good faith negotiations between the Parties and facilitated by third-party neutral, Frank Ray, during a full day of mediation and subsequent supplemental session. Settlement was possible only after each Party had the opportunity to assess the merits of the Parties' claims and defenses and to evaluate produced damages calculations, along with time and payroll data, to assess total potential exposure to Defendant and possible costs if litigation continued. (Baishnab Supp. Dec. at ¶3). As such, there is no indicia of fraud or collusion, and this factor favors approval of the settlement.

### 2. The complexity, expense, and likely duration of continued litigation favor approval.

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *Brent v. Midland Funding, LLC,* No. 3:11 CV 1332, 2011 U.S. Dist. LEXIS 98763, at *43 (N.D. Ohio Sep. 1, 2011) (Aug. 17, 2018) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.") (further citation omitted). Moreover, the Parties continue to disagree over

the merits of Representative Plaintiff's class claims, including: whether Defendant failed to pay the Class for all time worked; whether any Class Members are entitled to any overtime compensation due to any such alleged failure, and if so, how much; whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies; whether the case could proceed as a class; and whether the Class would be entitled to liquidated damages if they were to prevail on the merits. (Baishnab Dec. at ¶4).

For example, Representative Plaintiff alleges she and other hourly security guards like her were not paid for certain pre- and post-shift work. (Doc. 3 at ¶¶15-29). Examples of such alleged unpaid work include engaging in "pass on," checking docking areas, escorting contractors, checking for locked/unlocked doors, checking usability of elevators, attending meetings, and checking lights. (*Id*. at ¶¶18-29). The Complaint alleges that this unpaid time resulted in overtime violations. (*Id*. at ¶¶32-36). Defendant denies all of these allegations. (Doc. 9).

If forced to litigate this case further, the Parties would engage in complex, costly, and protracted litigation and discovery, including written discovery and depositions. Additionally, expert time studies could cost upwards of $30,000-$50,000, per location. Litigation is inherently uncertain, and the final outcome could result in no recovery for the Class at all. Settlement, on the other hand, provides immediate and substantial relief to Plaintiffs promptly and efficiently and amplifies the benefits of that relief through the economies of collective and class resolution. Moreover, the Settlement represents a successful resolution of the claims, given that a trier of fact might conclude that the Class is not entitled to any relief or to relief in an amount less than the amount agreed to in the Settlement, or that the Court might not allow the claims to proceed collectively. (Baishnab Dec. at ¶5).

      **3.     The amount of discovery engaged in by the Parties favors settlement approval.**

The Parties engaged in substantial investigation prior to mediation and negotiating the Settlement. Prior to filing the Action, Class Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate Complaint for the Court and Defendant. After the case was filed, Counsel for both sides engaged in numerous discussions regarding the merits of each side's respective positions. Additionally, in preparation for filing a motion for conditional certification, and before a stipulation was reached, Representative Plaintiff obtained declarations from four (4) Opt-in Plaintiffs. These were included with Representative Plaintiff's mediation submission, along with her own declaration and various documents such as handbook and training excerpts, which were also shared with Defendant in advance of mediation. Thus, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides. (*Id.* at ¶6).

Additionally, Class Counsel engaged a third-party vendor to create a damages model from payroll and timekeeping data produced by Defendant. This model included a toggle by which estimated unpaid minutes per day could be changed, thereby adjusting estimated alleged unpaid overtime. The model was shared with the mediator and Defendant's Counsel. Defendant's Counsel also created an independent damages model and liability calculation based on the same data set. (*Id.* at ¶7).

      **4.     The likelihood of success on the merits supports settlement approval.**

Class Counsel's empirical approach to settlement helps ensure a settlement that is "fair, reasonable, and adequate." (Baishnab Dec. at ¶¶8-21). Specifically, legal scholarship has observed that it is often the case that "both plaintiffs and defendants frequently reject settlement proposals that would have been financially advantageous." Likewise, many cases settle for an inappropriate

amount. (Baishnab Dec. at ¶9, *citing* Eyal Zamir, *et al*., *The Oxford Handbook on Behavioral Economics and the Law*, §24, 623 (1st ed. 2014)).

To avoid making poor settlement decisions, Class Counsel has adopted a systematic approach to analyzing settlements that is grounded in empirical research and designed to achieve the maximum utility of a lawsuit. Their approach is also specifically designed to avoid various decision-making biases that could result in the rejection of a favorable settlement or result in one that is disadvantageous to their clients. (Baishnab Dec. at ¶10).

One such bias is the "subadditivity effect," which is the tendency of people to judge the probabilities of the whole to be less than the probabilities of the parts. For example, in one study, attorneys were asked to calculate probabilities of being awarded four different ranges of damages. The collective probabilities summed to 170%. (*Id.* at ¶11, *citing* Eyal Zamir, *et al*., *The Oxford Handbook on Behavioral Economics and the Law*, §24, at 626).

Class Counsel's experience demonstrates attorneys generally conclude that a case with an estimated 50% chance of winning each of three different issues in the litigation is a "50/50" case. But it is not. Rather, there is only a 12.5% chance when the probabilities of all three issues are compounded (*i.e*., 0.5 X 0.5 X .5 = 0.125). (Baishnab Dec. at ¶12). Other biases include the self-serving bias, which causes litigants to overestimate the chances that an objective third party (i.e., the Court or a jury) will favor their perspective. Overoptimism and overconfidence biases also tend to result in poor predictions. (*Id*. at ¶13, *citing* Eyal Zamir, *et al*., *The Oxford Handbook on Behavioral Economics and the Law*, §13, 336-340, §24, 623, 626).

These cognitive biases affect all individuals to some degree, and they are particularly unhelpful in analyzing the reasonableness of a settlement. (Baishnab Dec. at ¶14, *citing*, *How Lawyer's Intuitions Prolong Litigation*, Cornell Law Faculty Publications. Paper 602, 109 (2013)).

5

To mitigate these biases, Class Counsel performs an Expected Value ("EV") calculation for nearly all cases,[1] which can be generalized as the anticipated value of a case at some point in the future after various uncertain events have occurred. (Baishnab Dec. at ¶14, *citing Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (explaining an EV calculation and holding that a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial….").

The EV calculation was done prior to mediation and before Class Counsel engaged in any significant settlement discussion. (Baishnab Dec. at ¶15). Class Counsel calculated the EV by summing the product of the probabilities of winning at each stage of the litigation and the expected outcome of success and the product of the probabilities of losing at each stage and zero, that is, EV = (probability of win X expected damages) + (probability of loss X $0) - Costs. (*Id.*, *citing* Eyal Zamir, *et al.*, *The Oxford Handbook on Behavioral Economics and the Law*, §24, 624 (1st ed. 2014)).

The EV of a case was calculated and visualized using the decision tree software TreeAge Pro©. A decision tree was created with various Decision and Chance (i.e., probability) nodes at each stage of the case that has a win/loss potential.[2] At the end of each "branch" in the tree is a Payoff node, which is the sum of the probabilities multiplied by damages for the branch. The probabilities and values of the entire case are then summed, resulting in a final EV. (Baishnab Dec. at ¶16).

---

[1] *See also*, Doc. 23-2 at PageID #: 238, ¶17.

[2] For a general discussion of the use of decision trees in litigation, the Court can refer to the following law review article: Marc B. Victor, *Decision Tree Analysis: A Means of Reducing Litigation Uncertainty and Facilitating Good Settlements*, 31 Ga. St. U. L. Rev. (2015).

Both potential damages and win/loss probabilities are typically determined through a collaborative process involving attorneys familiar with the case through participation in review of documents, interaction and interviews with the clients, and/or knowledge of relevant case law. All participating attorneys also have significant experience with state and federal wage and hour collective and class action litigation generally. Therefore, damages and probabilities are typically determined by a combination of averaging attorney estimates and/or consensus opinion. Empirical research establishes that a collaborative process like this results in more reliable predictions of case value than a single attorney's experience and intuition. (Baishnab Dec. at ¶¶17-18, *citing* Jonas Jacobson, et al., *Predicting Civil Jury Verdicts: How Attorney's Use (and Misuse) a Second Opinion*, Journal of Empirical Legal Studies, Volume 8, Issue S1, 99-119, (2011)).

Here, multiple Decision nodes were identified, each with corresponding Chance and Payoff nodes, such as: (1) collective/class or individual treatment; (2) results of summary judgment; (3) results of a jury trial; (4) a determination regarding willfulness; and (5) a determination regarding liquidated damages. Considerations also included high, mid, and low win rates. Settlement analysis, therefore, used both the pre-mediation damages model and node chance percentages in determining the EV for this case. (Baishnab Dec. at ¶19).

In the present matter, the total settlement amount exceeds the calculated expected value.[3] Judge Posner, writing for a Seventh Circuit panel, concluded that an EV is the proper method for determining the fairness of a class settlement: "A settlement is fair to the plaintiffs in a substantive sense…if it gives them the expected value of their claim if it went to trial…." *Mars Steel Corp.*, 834 F.2d at 682 (explaining an EV calculation where a settlement of $7 million or more would be

---

[3] The actual calculated expected value is being submitted to the Court for in camera review.

7

justified even where theoretical damages not accounting for compounded risk of loss could be up to $1 billion).

Accordingly, the likelihood of success on the merits supports settlement approval demonstrated by the fact that settlement amount exceeds the calculated EV.

### 5. Class Counsel and the Class Representative favor approval.

"The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *11 (S.D. Ohio Aug. 17, 2018) (further citation omitted). Class Counsel is highly experienced in wage-and-hour collective and class actions, has acted in good faith, and has represented his clients' best interests in reaching the Settlement. Class Counsel supports the Settlement as "fair, reasonable, and adequate", and in the best interest of the Class as a whole. (Baishnab Dec. at ¶22). Class Counsel has thoroughly discussed the Settlement with the Class Representative, who likewise agrees the Settlement is fair, reasonable, and in the best interests of the Class she represents. (*Id.* at ¶22). Accordingly, this factor favors approval of the Settlement.

### 6. The reaction of absent Class Members favors approval.

As explained by the Settlement Administrator, Analytics Consulting LLC ("Analytics"), the settlement notice process satisfied due process. *Fidel v. Farley*, 534 F.3d 508, 513-14 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 943-44 (10th Cir.2005) (citing *Mullane,* 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974)). Defendant's Counsel provided Analytics a spreadsheet containing the names and addresses for the putative Class Members, in accordance with the Court's preliminary approval Order. (Doc #: 25-2 at PageID #: 267, ¶6). Analytics imported the Class Data to a project-specific

8

database and processed the records through the US Postal Service's National Change of Address (NCOA) database to standardize and update the mailing addresses. (*Id*. at ¶7).

Analytics mailed the Notice of Proposed Settlement of Class Action and Fairness Hearing ("Notice") to the 134 Class Members. (*Id*. at ¶8). Only 17 Notices were returned to Analytics by the U.S. Postal Service without a forwarding address, and Analytics conducted an address trace in an attempt to ascertain a valid address for the affected Class Members. (*Id*. at ¶9). This trace resulted in seven new addresses being identified for Class Members, at which time Analytics updated the addresses and processed a remail of the Notice to each of the affected Class Members. (*Id*. at ¶9).

The Notice gave Class Members until September 20, 2023, to object to or opt out of the settlement. No Class Member has filed any objection to the settlement and no Class Members opted out of the settlement. (*Id*. at ¶¶10-11). According, this factor favors settlement approval.

### 7. Public interest favors settlement approval.

As the Sixth Circuit recently noted in another case involving the approval of an FLSA settlement, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). Here, rather than face the risk and uncertainty of continued litigation, the Settlement confers immediate benefits on the Settlement Class, avoids the risks and expense of further litigation, and conserves judicial resources. Additionally, court approval demonstrates that employees and employers can resolve differences amicably through the courts. Thus, the Court should find that this factor supports approval of the Settlement.

### III. CONCLUSION

For the foregoing reasons, in addition to the reasons outlined in the Parties' Joint Motion for Final Approval of FLSA Settlement and their Joint Motion for Final Approval of Class Action (Docs. 23, 25), the Parties respectfully request that this Court enter the Proposed Order that was attached to their November 6, 2023, Joint Motion and emailed to the Court.

Respectfully submitted,

| NILGES DRAHER LLC | SPENGLER NATHANSON P.L.L. |
|---|---|
| */s/ Robi J. Baishnab* <br> Robi J. Baishnab (0086195) <br> 1360 E 9th St., Suite 808 <br> Cleveland, OH 44114 <br> Telephone: (216) 230-2955 <br> Facsimile: (330) 754-1430 (Fax) <br> Email: rbaishnab@ohlaborlaw.com <br><br> Shannon M. Draher (0074304) <br> Hans A. Nilges (0076017) <br> 7266 Portage Street, N.W., Suite D <br> Massillon, OH 44646 <br> Telephone: (330) 470-4428 <br> Facsimile: (330) 754-1430 <br> Email: sdraher@ohlaborlaw.com <br>       hans@ohlaborlaw.com <br><br> *Counsel for the Class* | */s/Emilie K. Vassar (with permission)* <br> Renisa A. Dorner (0040192) <br> Emilie K. Vassar (0084076) <br> 900 Adams Street <br> Toledo, OH 43604 <br> Telephone: (419) 241-2201 <br> Telefax: (419) 241-8599 <br> rdorner@snlaw.com <br> evassar@snlaw.com <br><br> *Counsel for Defendant* |

### CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties via the Court's electronic filing system. Parties may access this filing through the Court's system.

                                         */s/ Robi J. Baishnab* <br>
                                         *Counsel for the Class*