UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Rosalind Chambers, *on behalf of herself and those similarly situated*,

    Plaintiff,

v.

Continental Secret Service Bureau, Inc.,

    Defendant.

Case No. 3:22-cv-468

MEMORANDUM OPINION
AND ORDER

## I.   INTRODUCTION

Before me is the parties' Joint Motion for Final Approval of a Class Action and Collective Action Settlement ("Joint Motion for Final Approval"). (Doc No. 25). Prior to conducting a final fairness hearing, I issued an Order requiring the parties to submit a supplemental joint statement addressing certain deficiencies in their Joint Motion. (Doc. No. 26). The parties filed two such supplemental statements, one before the final fairness hearing and one after. (Doc. No. 27; Doc. No. 28). On November 16, 2023, I conducted the final fairness hearing by telephone. Counsel for both parties were present on the call, but no provisional class members appeared by phone or in person. After reviewing the parties' motion and supplemental statements, and hearing no objections, I grant the motion for the reasons stated below.

## II.   BACKGROUND

The Representative Plaintiff, Rosalind Chambers, filed her Original Complaint on March 23, 2022, and her Amended Complaint on April 1, 2022, alleging collective and class claims for unpaid

overtime under the FLSA and Ohio Revised Code § 4111.03(D) against Defendant Continental Secret Service Bureau, Inc. (Doc. No. 1; Doc. No. 3).

Specifically, Chambers alleged that Continental failed to pay her, and others similarly situated, for compensable pre-shift and post-shift work consisting of a number of duties, including "pass on" or "pass down," that were integral and indispensable to the jobs they were hired to perform as security guards/officers. Because of this alleged unpaid time, Chambers alleged that Continental violated the FLSA and Ohio law by not paying for all overtime earned in weeks in which she and others like her worked 40 or more hours. (Doc. No. 3 at 3-5). Continental answered the complaint. (Doc. No. 9). It denied, and continues to deny, Chambers's material allegations, denied that it violated the law, and offered affirmative defenses for its conduct. (*Id.*)

As noted in the Order granting the parties' Joint Motion for Preliminary Approval, in order to avoid the burden, expense, risks, disruption, and uncertainty of protracted collective action litigation, the parties engaged in substantial efforts to resolve the claims of Chambers and the similarly situated security employees at office building locations similar to One Seagate in Toledo, Ohio. (Doc. No. 24 at 2-3).

On October 18, 2022, the parties mediated before a third-party mediator, Frank Ray, with a supplemental session held on October 24, 2022. Those efforts resulted in an agreement. (*See* Doc. No. 23 at 5). On October 25, 2022, the parties filed their Joint Notice of Settlement. (Doc. No. 20). The terms of that agreement were set forth in the settlement agreement filed with the court on November 23, 2022. (*See* Doc. No. 21-1). Following a status conference on June 16, 2023, the parties conferred and amended their agreement to reflect the terms set forth in the Amended Agreement, to resolve this Action in its entirety and ask that this Action be dismissed with prejudice. (Doc. No. 23-1).

## II. TERMS OF THE SETTLEMENT AGREEMENT

The settlement class is defined as: "All present and former hourly security employees who worked at office building locations similar to One Seagate that required shift changes, and who worked over 40 hours in a given workweek at such location during the time period from July 11, 2019 to the present" (the "Settlement Class"). (Doc. No. 23-1 at 4). The Amended Agreement will cover Chambers, the 7 current Opt-in Plaintiffs,[1] and the proposed class (the "Class" or "Class Members"), consisting of the 126 present and former hourly security employees identified on Exhibit A of the Amended Agreement, all of whom worked at office building locations similar to One Seagate that required shift changes, worked over 40 hours in a given workweek at such locations from July 11, 2019 through October 18, 2022, have not yet joined this action, and have more than zero damages as calculated in Plaintiffs' counsel's damages model used for mediation. (Doc. No. 23-1 at 1-2). All 134 individuals are respectively identified on Exhibit A of the Amended Agreement. (*Id.* at 24-27).

The settlement will be structured pursuant to Section 216(b) of the FLSA as to Chambers and the current Opt-In Plaintiffs and as a Rule 23 class action settlement as to the remaining absent putative Class Members. (*Id.* at 1).

The terms of the attached Amended Agreement include: the total settlement amount to be paid by Continental; the effective date of the settlement; the form, content, and method of distribution of the proposed notice to the Class Members; the calculation of individual payments to eligible recipients; the process for distributing individual payments to recipients; the proposed service award to Chambers in recognition of her service in this action and for providing a general

---

[1] The 7 opt-in plaintiffs are: Jeremy Riffe, Latina Jett, Cameron Morgan, Donald Maggott, Emilio Hernandez, Kimberly Hudson, and Ahmad Reda. (*See* Docs. No 4-5, 11-13, 15). On October 18, 2022, Opt-in Plaintiff Andrew Mominey voluntarily withdrew his Consent to Joint form, without prejudice. He is not part of the Settlement. (Doc. No. 19)

3

release; and the proposed distribution of reasonable attorneys' fees and costs to class counsel. (*See generally id.*).

The Total Settlement Amount of $102,500.00 includes all alleged overtime damages, Individual Class Settlement Payments, Representative Plaintiff's Service Award, attorneys' fees and litigation costs, and any settlement administration costs in excess of $6,475.00. This amount does not include Defendant's share of applicable employer tax withholdings or any settlement administration costs up to $6,475.00, which Defendant agrees to pay outside of the fund and as directed by the Settlement Administrator. (*Id.* at 7-8). Class counsel has represented that they have reasonably incurred $4,082.60 in costs and expenses. (Doc. No. 23-2 at 7; Doc. No. 25-3 at 2).

The amount available for estimated Individual Class Settlement Payments is $60,251.30, consisting of the Total Settlement Amount less the Representative Plaintiff's Service Award and the Attorneys' Fees and Costs payments. (*See* Doc. No. 23-1 at 27). The estimated Individual Class Settlement Payments have been calculated proportionally based on each Class Member's alleged overtime damages, and final payments will be calculated by the Third Party Settlement Administrator. The minimum Individual Class Settlement Payment is to be $25.00. (*Id.* at 8). The payments range from $25.00 to $2,656.11. (*Id.* at 24-27). The average payment is $449.64. (*Id.* at 27).

The Class Representative Service Award Payment in the amount of $4,000.00 will be paid to Rosalind Chambers, in addition to her Individual Payment, for her services in this Action and in exchange for her additional general release. (Doc. No. 23-1 at 9). In consideration for Representative Plaintiff's waiver and release of all claims, Continental further agrees to release Chambers from the uniform debt which Continental previously withdrew from collections pending the approval of the Settlement. (*Id.*). Full release of Chambers by Continental of the uniform collections debt is effective upon my final approval of this settlement. (*Id.* at 9, 15-16). The

4

Attorneys' Fees and Costs Payment shall consist of one-third (1/3) of the Total Settlement Amount, equal to $34,166.67, plus class counsel's actual costs, which are $4,082.60. Defendant does not oppose these amounts and agrees that they are reasonable. (*Id.* at 9).

Upon the Effective Date, Representative Plaintiff, Opt-in Plaintiffs, and Class Members will release Released Claims against Released Parties during the Released Period, which runs from July 7, 2019, through October 18, 2022. (*Id.* at 2-3, 15).

### III.   RELEVANT PROCEDURAL BACKGROUND FOLLOWING PRELIMINARY APPROVAL

On July 24, 2023, I entered an order granting provisional certification of the Rule 23 class, granting preliminary approval of the Settlement and authorizing notice to the provisionally certified class members. (Doc. No. 24). In doing so, I preliminarily: (1) approved of the Settlement as fair, reasonable, and adequate under 29 U.S.C. § 216(b) and Rule 23(e); (2) granted certification pursuant to Rule 23(a) and (b)(3) of a settlement class consisting of the Class Members; (3) appointed Robi Baishnab, Shannon Draher, and Hans Nilges of the law firm Nilges Draher as Class Counsel pursuant to Rule 23(g); (4) appointed Rosalind Chambers as class representative; (5) appointed Analytics Consulting, LLC ("Analytics") as the Settlement Administrator; and (6) approved of the settlement procedure and timeline as set forth in the Preliminary Approval Order. (*Id.* at 2-5).

Analytics received a list containing the names and last-known mailing addresses for the Class Members. (Doc. No. 25-2 at 2). Analytics imported the Class Data to a project-specific database and processed the records through the U.S. Postal Service's National Change of Address database to standardize and update the mailing addresses. (*Id.* at 3). On August 21, 2023, Analytics mailed by first-class mail the court-approved "Notice of Proposed Settlement of Class Action and Fairness Hearing" to the 134 Class Members. (*Id.*). To date, 17 Notices were returned to Analytics by the U.S. Postal Service without a forwarding address.

The Settlement Administrator then conducted an address trace in an attempt to ascertain a valid address for the affected Class Members. (*Id.*). As a result of these efforts, 7 new addresses were identified for Class Members. The Settlement Administrator subsequently updated the addresses and processed a re-mail of the Notice to each of the affected Class Members. (Doc. No. 25-2 at 2). The Notice gave Class Members until September 20, 2023, to object to or opt out of the settlement. No Class Member has filed any objection to the settlement and no Class Members opted out of the settlement. (*Id.*).

### IV.     ANALYSIS

District courts use a three-step procedure for approving class settlements under Rule 23 of the Federal Rules of Civil Procedure:

> (1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement.

*In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)).

Because I have already preliminarily approved the proposed Settlement, I need only determine: (1) whether the Class Members were given the requisite notice; and (2) whether the Settlement should be given final approval.

#### A.     Notice to Class Members

To satisfy due process requirements, "individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974). "The notice should be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (hereinafter, "*UAW*") (quoting *Mullane v. Central Hanover*

*Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "Rule 23(e) gives the Court 'virtually complete' discretion as to the manner of service of settlement notice." *Vassalle v. Midland Funding, LLC*, No. 3:11-cv-00096, 2014 WL 5162380, at *11 (N.D. Ohio Oct. 14, 2014) (quoting *Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981).

I previously approved the form, substance, and manner of distribution of the Notice. (Doc. No. 24 at 4-5). The parties have now represented that the Notice was distributed in the manner approved, as discussed above. (*See* Doc. No. 25-2 at 2). That is, the Class Members were individually mailed the Notice of the proposed Settlement. Because no Notice was returned as undeliverable after the second mailing, I am satisfied that the Class Members were given notice of the proposed Settlement and an opportunity to object.

### B. Final Approval

"Before approving a settlement, a district court must conclude that it is 'fair, reasonable, and adequate.'" *UAW*, 497 F.3d at 631 (quoting Fed. R. Civ. P. 23(e)(2)). To do so, a district court considers the following factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Id.* at 631. The district court has "wide discretion in assessing the weight and applicability" of the relevant factors. *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

#### 1. Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek Development Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) (quotation omitted).

When evaluating settlements, "courts are not required to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Déjà Vu Servs., Inc.*, 925 F.3d at 895-96 (internal quotation marks and further citation omitted). "The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632 (6th Cir. 2007).

Still, "the district court must specifically examine what the unnamed class members would give up in the proposed settlement, and then explain why—given their likelihood of success on the merits—the tradeoff embodied in the settlement is fair to unnamed members of the class." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 309 (6th Cir. 2016). "[T]he district court cannot substitute the parties' assurances or conclusory statements for its independent analysis of the settlement terms [or] merely recite the respective arguments of the objectors and parties, and then offer up platitudes about the risks of litigation generally." *Id.* (internal quotation and marks omitted).

Chambers alleges Continental failed to pay her and other similarly situated employees for compensable time spent in receiving "pass on" or "pass down" reports before or after their shifts. (Doc. No. 3 at 3-4). She claimed she and others clocked in and out when they began and ended work, but were paid based on their scheduled shifts. (*Id.* at 4). Continental admitted it paid employees based on their schedules, but denied it used a clocking in and out system, denied employees were instructed or permitted to work outside their scheduled shift, and denied employees were not paid for all time worked. (Doc. No. 9 at 7-10). Continental alleged it utilized the GPS phone tracker system merely to ensure that employees were physically at their assigned locations, and that employees were instructed to notify Continental if they worked beyond their scheduled hours. (*Id.* at 9).

8

      a.      **Evaluation of the merits**

To make out a claim of unpaid overtime in violation of the FLSA, a plaintiff must show (1) that they performed compensable labor in excess of 40 hours per week and (2) their employer failed to pay them for that time. *See Walsh v. KDE Equine, LLC*, 56 F.4th 409, 413 (6th Cir. 2022); 29 U.S.C. § 207(a)(1), (e). The plaintiff bears the burden of establishing lack of proper compensation. *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999). If a plaintiff shows the defendant's violations were willful, they qualify for a three-year statute of limitations; otherwise, the limitations period is two years. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988). In addition, the FLSA allows a plaintiff to obtain "an additional equal amount" of their unpaid wages as "liquidated damages," but not if the defendant's violations were done in "good faith." 29 U.S.C. § 216(b), 260.

The parties would face substantial legal and factual uncertainty if they continued to litigate this case.

First, the existence of the GPS phone system, in conjunction with the payroll method utilized by Continental during the relevant time period, poses an obstacle to both Chambers and Continental. Continental would argue a review of the GPS phone system records shows that some, but not all employees used the GPS system, some used it only inconsistently, and some logged their location multiple times during their shifts. (Doc. No. 28-1 at 1). In addition, Continental would argue that in some instances, if used as a "clock-in" system, the records show that individuals were sometimes paid for longer than the time they worked. (*Id.*). To the extent that timekeeping and payroll records contradict Chambers's position, Chambers may face challenges in proving damages if this litigation continued. Chambers, meanwhile, may argue that the GPS phone system supports her damages argument in many cases. In addition, to the extent Continental failed to keep accurate records, Chambers may be entitled to a reasonable estimate. *See Monroe v. FTS USA, LLC*, 860 F.3d 389, 687 (6th Cir. 2017)

Second, the parties disagree over the applicable *mens rea* for any alleged violations. Whether any violations were "willful" determines whether the two-year or three-year limitations period should apply. (*See* Doc. No. 28 at 2). The calculation period for the Settlement extends from July 11, 2019 to October 18, 2022. (*Id.* at ¶ 21). That first date extends back two years and eight months from the March 23, 2022 filing date for this case. If litigated further, Continental would carry the risk that a 3-year limitations period for willful violations might apply, extending the start date for the damages period back to March 23, 2019. On the other hand, if any proven violations were done in "good faith," Chambers and the class members could not obtain the additional liquidated damages under the FLSA. 29 U.S.C. § 260.

### b. The settlement terms

The Settlement would compensate the class members for alleged unpaid overtime during a three-year-and-three-month calculation period, including average payments of $449.64. (Doc. No. 28-3 at 27). In addition, the Settlement would authorize a $4,000 incentive award to the Representative Plaintiff in this case, Rosalind Chambers.

Counsel has submitted declarations from 11 class members, each attesting that the settlement is fair and equitable. (*See* Doc. No. 28-3).[2] These declarations approve of a wide range of individual payments, from $23.84 on the lowest end to $2,196.43 on the highest end. (*Compare* Doc. No. 28-3 *with* Doc. No. 23-1 at 24-27). Counsel for the parties have represented that the individual payment amounts were calculated proportionally based on each Class Member's alleged overtime damages. (Doc. No. 23-1 at 8).

---

[2] Those class members are: Rosalind Chambers, Christopher Harris, Emilio Hernandez, Kimberly Hudson, Donald Maggott, Susan Middleton, Cameron Morgan, Ahmad Reda, Jeremy Riffe, Ed Sallee, and Tasha Wade.

### c. Balancing the settlement terms against the likelihood of success

When balanced against the risk raised by the legal disputes described above, "[t]he tradeoff embodied in the settlement is fair." *Shane Grp., Inc.*, 825 F.3d at 809.

Under the terms of the Settlement Agreement, class members will receive, on average, $449.64, which represents approximately 8.25 minutes of unpaid time per day per class member. (Doc. No. 28 at 3). Class counsel represents that he initially demanded an amount equal to, on average, 14.5 minutes of unpaid time per day per class member. (*See id.*). On the benefit side, the Class Members will benefit by receiving compensation for their unpaid time. All the available evidence in the record suggests the class members are satisfied with these payment amounts. (*See* Doc. No. 28-3, Doc. No. 25-2 at 3). The Defendant will benefit by resolving the FLSA claims of 134 former employees and avoiding the possibility that additional damages, such as liquidated damages, could be recovered at trial. (*See* Doc. No. 28 at 2-3).

In addition, Chambers herself will be reasonably compensated for her contributions to the case. Incentive awards are an "efficacious way[] of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class" as well as acknowledging the risks incurred because of representative plaintiffs' positions as the public face of the lawsuit. *Satterly v. Airstream, Inc.*, No. 3:19-cv-32, Case No. 3:19-cv-107, 2020 WL 6536342, at *8 (citing *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). A proposed service award of $4,000 is within the range typically awarded in wage and hour actions. *See, e.g.*, *Satterly*, 2020 WL 6536342, at *8–9 (approving service awards between $10,000 and $15,000 to the named plaintiffs); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (approving a $10,000 service award for each named plaintiff).

On the risk side, both parties will forego several forms of legal and factual risk, including the risk that additional discovery would uncover details about the compensability of the unnamed

11

plaintiffs' work, and the unresolved question of which statute of limitations applies. These risks, among other considerations, appear to have informed the negotiations between the parties that brought the number of unpaid minutes per day per class member in the settlement from 14.5 to 8.25.

The likelihood of success on the merits weighs in favor of approval.

### 2. Risk of Fraud or Collusion

"Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006). Because there is no evidence here to rebut that presumption, I conclude there is no risk of fraud or collusion.

### 3. Complexity, Expense, and Likely Duration of Continued Litigation

The Sixth Circuit has acknowledged the complexity of suits combining FLSA collective actions with Rule 23 class action. *Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 898 (6th Cir. 2019)). This case was no exception.

If forced to litigate this case further, the parties would engage in additional complex, costly, and protracted discovery including the further production and review of electronic and paper documents and one or more depositions. Presumably, this lengthy and expensive discovery process would be followed by dispositive motion practice. In light of the legal and factual complexities of the case, this case may not be resolved through motion practice but may proceed to trial resulting in further delay and expense. Settlement now "secures a substantial benefit for the Class in a highly complex action, undiminished by further expenses, and without delay, costs, and uncertainty of protracted litigation." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006). Therefore, I conclude this factor weighs in favor of approval.

### 4. Amount of Discovery Engaged in by the Parties

To confirm plaintiffs "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the amount of discovery taken must be considered. *Id.* at 374. "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006). "[T]he absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.*

Here, the parties agree they have engaged in what they deem to be ample investigation. Counsel for Chambers has also represented that they performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate complaint for the Court and for Defendant. (Doc. No. 23 at 10). After the case was filed, counsel for both sides engaged in discussions regarding the merits of each side's respective positions. Additionally, in preparing for filing a motion for conditional certification before a stipulation was reached, Representative Plaintiff obtained declarations from four Opt-in Plaintiffs. These were included with Representative Plaintiff's mediation submission, along with her own declaration and various documents, which were also shared with Defendant in advance of mediation. (*See id.*).

Additionally, Plaintiffs' Counsel engaged a third-party vendor to create a damages model from payroll and timekeeping data produced by Defendant. This model included a toggle by which estimated unpaid minutes per day could be changed, thereby adjusting estimated alleged unpaid overtime. The model was shared with the mediator and defense counsel. Defense counsel also created an independent damages model and liability calculation based on the same data set. (*Id.*).

13

Based on the parties' representations, I am satisfied that sufficient discovery has been conducted to inform the parties so that they could negotiate a fair, reasonable, and adequate settlement.

### 5. The Opinions of Class Counsel and the Class Representative

The Sixth Circuit has advised that "[t]he court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983). Class Counsel in this case has served as "Class Counsel" in many similar collective and class actions under the FLSA, including over 200 cases since 2012. (*See* Doc. No. 23-2 at 3). Therefore, I consider the Class Counsel to be "experienced" and give deference to their judgment that this Settlement should be approved. I also note that this Settlement includes an award to the Representative Plaintiff, Rosalind Chambers of $4,000, and that she approves of the Settlement. (*Id.* at 17). As such, I find this factor weighs in favor of approval.

### 6. The Reaction of Absent Class Members

The parties represent that no class members objected to, or opted out of, the Settlement, and only one class member voluntarily withdrew his Consent to Join form. (Doc. No. 25 at 4; Doc. No. 19). Though the Class Members were able to "opt-in" to the Settlement by remaining silent, the lack of objections and opt-outs supports a finding that the reaction of the absent class members is neutral if not favorable.

### 7. The Public Interest

"Public policy generally favors settlement of class action lawsuits." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007). This case is no exception to that general rule. The Settlement here compensates the Class Members for all of their unpaid overtime and conserves judicial resources by "avoid[ing] further protracting the case through litigation of individual issues, such as the applicability of the statute of limitations to individual claimants." *Id.* Further, "enforcing the

14

FLSA furthers an important interest in 'encouraging employees and others to ensure that employers comply with laws governing employment.'" *Déjà Vu Servs., Inc.*, 925 F.3d at 899 (quoting *Levan v. Sears, Roebuck & Co.*, 984 F. Supp. 2d 855, 871 (E.D. Tenn. 2013)). The public interest weighs in favor of approving the proposed settlement.

Because the factors weigh in favor of approval, the Joint Motion for Final Approval is granted.

### C. Plaintiff's Attorneys' Fees

Rule 23 authorizes a court to "award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In addition, the FLSA and the Ohio Constitution provide the right to reasonable attorneys' fees for a party who recovers unpaid wages. 29 U.S.C. § 216(b); Ohio Const., art. II, § 34a. "[A]wards of attorney's fees by federal courts in common fund cases" must be "reasonable under the circumstances." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Id.* The first step to determining those fees is to choose a method of calculation – either the lodestar method or the percentage method. The lodestar method compensates attorneys based on "hours spent and rates charged," while the percentage method compensates attorneys by providing them with a percentage of the amount in the common fund. *Id.* After making this choice, the court must assess the reasonableness of the fee. *Id.* (citing *Moulton v. U.S. SteelCorp.*, 581 F.3d 344, 352 (6th Cir. 2009)).

The Settlement proposes that Class Counsel receive one third of the common fund, totaling $34,166.67. (Doc. No. 23-1 at 9).

15

### 1. Choosing a method

While the lodestar approach "better accounts for the amount of work done," the percentage approach "more accurately reflects the results achieved." *Rawlings*, 9 F.3d at 516. The percentage method "is easy to calculate[,] it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery[,] and it encourages early settlement." *Id.* It is particularly appropriate for FLSA wage-and-hour cases like this one because it promotes the employee-protecting objectives of the FLSA by maximizing the class members' recovery at an early stage of the case. *See Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 WL 687246 at *5 (S.D. Ohio Feb. 16, 2021).

In addition, in light of the relatively small class size and relatively short life of the case, applying the lodestar method would be "too time-consuming of scarce judicial resources" because it would require the court to "pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier," which would lengthen the litigation but provide little additional benefit to the parties. *Rawlings*, 9 F.3d at 517.

Therefore, the percentage method is appropriate in this case.

### 2. **The reasonableness of the fee**

Six factors typically inform the analysis of whether an attorney's fee award is reasonable:

> "(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides."

*Moulton v. U. S. Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009) (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)). As relevant here, courts also look to the value of awards in similar cases. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

16

First, Class Counsel's work resulted in a significant benefit to class members. The Settlement provides class members with an average payment of nearly $450 each (and, for some class members, much more than that), eliminates the risk and uncertainty that the Parties would otherwise face if the litigation were to continue, and promotes the remedial purpose of the FLSA. *See Dewald*, 2021 WL 687246 at *5. There have been no opt-out requests and no objections, demonstrating that class members recognize the Settlement's substantial benefit as a result of Class Counsel's efforts. *See Hainey v. Parrott*, 617 F. Supp. 2d 668, 675 (S.D. Ohio 2007)). This weighs in favor of the reasonableness of the fee award.

Second, there is a benefit to society in ensuring that these claimants can join together in this collective action and proceed to settlement. *See Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 WL 2838148, at *8 (S.D. Ohio June 30, 2017) (citing *In re Telectronic Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001)). As the Supreme Court has recognized, class actions "permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

That is the case here. The average settlement payment, covering each class member's unpaid overtime for a nearly three-year period, is $449.64, and the most any class member would receive is $2,656.11. (*See* Doc. No. 23-1 at 24-27). An individual wage-and-hour claim for even the highest payment amount in this settlement is unlikely to prove economical: this is why many wage-and-hour settlements involve relatively low settlement values per plaintiff. *See* National Economic Research Association, *Trends in Wage and Hour Settlements: 2019 Update* at 7 (June 4, 2020).[3] Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *See In re Telectronic Pacing Sys., Inc.*, 137 F. Supp. 2d at 1043. The societal benefit

---

[3] Available at
https://www.nera.com/content/dam/nera/publications/2020/PUB_Wage_and_Hour_Settlements_060220.pdf

of the fee award weighs in favor of granting it.

Third, courts in this circuit have designated fees ranging from 20 to 50 percent of the common fund as "reasonable." *See, e.g.*, *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380-81 (S.D. Ohio 2006) ("Attorneys fees awards typically range from 20 to 50 percent of the common fund") (collecting cases); *see also Déjà Vu Servs., Inc*, 925 F.3d at 898 ("[i]t is not abnormal for negotiated attorneys' fee awards to comprise 20% to 30% of the total award"). The Settlement would grant Class Counsel a fee of one third of the common fund, which is well within this range. In addition, Class Counsel represents that the fee awarded here, $34,166.67, is less than the $36,125.00 in fees they have incurred over the life of this lawsuit. (*See* Doc. No. 25-3 at 2).

Fourth, Representative Plaintiff is represented by experienced counsel. All counsel, including Defendant's counsel, are qualified and have substantial experience in federal litigation and class action litigation. (*See* Doc. No. 23-2 at 3). Class Counsel has substantial experience in wage-and-hour litigation. *See id.* This factor weighs in favor of a one-third fee award.

For these reasons, I conclude the fees requested are reasonable and I grant Class Counsel's request for fees for one-third of the common fund, or $34,166.67 in attorneys' fees.

**D. Reimbursement of Costs and Expenses**

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003).

Here, Class Counsel requests reimbursement for $4,082.60 in costs and expenses. (Doc. No. 23-2 at 7; Doc. No. 25-3 at 2).

I conclude, and Defendant does not dispute, that these expenses are reasonable and necessary in connection with litigating and resolving this action. I grant Class Counsel's request for expense reimbursement of $4,082.60 and also approve the request for any settlement administration costs in excess of $6,475.00.

### V. Conclusion

For the reasons stated above, I grant the Parties' joint motion for final approval. (Doc. No. 25). Further, I conclude as follows:

1. Pursuant to Federal Rule of Civil Procedure 23(e)(2), I find, after a hearing and based on the parties' submissions, that the Settlement Agreement is fair, reasonable, and adequate. In reaching this conclusion, I considered the record in its entirety and heard the arguments of counsel for the Parties. In addition, I considered a number of factors, including: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the Class Members to the Settlement; (3) the stage of proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of maintaining the class action through the trial; and (6) the reasonableness of monetary benefits to the Class Members;

2. The terms and provisions of the Settlement are the product of thorough, arms-length negotiations among experienced and competent counsel. Approval of the Settlement will result in substantial savings of time, money, and effort to the court and the parties and will further the interests of justice;

3. Pursuant to the Settlement Agreement and the July 24, 2023 Order Granting the Parties' Joint Motion for Preliminary Approval of Class Action Settlement, the Class is defined as "All present and former hourly security employees who worked at office building locations similar to One Seagate that required shift changes, and who worked over 40 hours in a given workweek at such location during the time period from July 11, 2019 to the present."

4. All Class Members are bound by this Judgment and the terms of the Settlement;

5. Nothing in the Settlement Agreement, this Judgment, or the fact of the Settlement constitutes any admission by any of the parties of any liability, wrongdoing, or violation of law; damages or lack thereof; or of the validity or invalidity of any claim or defense asserted in the Action;

6. I have considered the submissions by the parties and all other relevant factors, including the results achieved and the efforts of Class Counsel in prosecuting the claims on behalf of the Class Members. Representative Plaintiff participated in the action, acted to protect the Class Members, and assisted her counsel. The efforts of Class Counsel have produced the Settlement entered into with good faith, providing

       a fair, reasonable, adequate, and certain result for the Class Members.  The total amount of the Settlement fund shall be $102,500.00.  This includes a total of $60,251.30 for settlement payments for Class Members.  Class Counsel has made application for an award of $34,166.67 in attorneys' fees and $4,082.60 in expenses incurred in the prosecution of the action on behalf of itself and the Class Members. I find that the amounts requested for fees and expenses to be fair, reasonable, and adequate under the circumstances. I hereby award $38,249.27 in total as attorneys' fees and expenses to Class Counsel. Further, Representative Plaintiff is entitled to a fair, reasonable, and justified service award of $4,000 pursuant to the Settlement Agreement and to be paid from the Settlement Fund;

7. This case is dismissed with prejudice; and

8. Without affecting the finality of this Judgment, the Court reserves jurisdiction over the enforcement of this Judgment and the Settlement Agreement and all ancillary matters.

So Ordered.

                                                s/ Jeffrey J. Helmick
                                                United States District Judge